UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

CECIL HAWKINS,

                Plaintiff,                  Case No. 1:10-cv-432

v.                                       Honorable Paul L. Maloney

NANETTA NORWOOD et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.
The Court has granted Plaintiff leave to proceed *in forma pauperis.* Under the Prison Litigation
Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any
prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a
claim upon which relief can be granted, or seeks monetary relief from a defendant immune from
such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's
*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's
allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504
U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure
to state a claim against Defendants Baker, Groves, Chambers, Migliorino, Smith, Benoit,
Richardson, Embry, Huss, Tincknell, Edlund, Hofbauer, Russell, Bahrman, Hurrell, Straub, Caron,
Place, Napel, Caruso, Klinesmith, Owens, Collette, Mengel, Lewycky, Kero, Ramey, Rothermel,

McCarthy, and John/Jane Doe #3, #4, and #5. The Court will serve the complaint against Defendants Norwood, Ferguson, Gardner, Wolever, Ingraham, Stine, Rutgers, Luther and Shreve.

## Discussion

I.   Factual allegations

Plaintiff Cecil Hawkins presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Marquette Branch Prison (MBP), though the actions he complains of also occurred while he was housed at the Ionia Maximum Correctional Facility (ICF). In his original complaint filed on or about April 26, 2010,[1] Plaintiff included allegations against only three ICF Defendants: Deputy Warden Nanetta Norwood, Administrative Assistant Robert Groves and Medical Service Provider John Doe #1. Plaintiff's complaint included allegations setting forth a single cause of action for excessive use of force. Plaintiff indicated that he intended to raise five additional causes of action, though he did not include any facts or name any Defendants under those causes. Contemporaneously with the filing of his complaint, Plaintiff moved for a 90-day extension of time in which to file an amended complaint. The Court granted the motion.

Plaintiff filed the instant amended complaint on or about July 11, 2010.[2] In his amended complaint, Plaintiff has raised 9 causes of action and has sued the following 43 Defendants: ICF Deputy Warden Nanetta Norwood; ICF Warden Willie Smith; ICF Assistant Robert Groves; ICF Dr. unknown Migliorino; ICF Corrections Officers (COs) Willette Chambers,

---

[1]Under Sixth Circuit precedent, a prisoner's pleading is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Plaintiff dated his application on April 26, 2010, and it was received by the Court on April 30, 2010. Thus, it must have been handed to prison officials for mailing at some time between April 26 and 30, 2010. For purposes of this opinion, the Court has given Plaintiff the benefit of the earliest possible filing date.

[2]Plaintiff signed his amended complaint on July 11, 2010, though it was not received by the Court until July 26, 2010. Again, for purposes of this opinion, the Court has given Plaintiff the benefit of the earliest possible filing date.

unknown Ferguson, unknown Gardner, Basil Wolever, unknown Ingraham, unknown Stine, unknown Rutgers, unknown Luther, unknown Shreve, unknown John Doe #1, unknown John Doe #2; ICF Mailroom Supervisor unknown John/Jane Doe #3; ICF Local Litigation Coordinator unknown John/Jane Doe #4; ICF Administrative Officer unknown John/Jane Doe #5; ICF Assistant Resident Unit Supervisors (ARUSs) Leslie Benoit and Pamela Richardson; ICF Resident Unit Manager (RUM) unknown Embry; Assistant Deputy Warden (ADW) Erica Huss; MPB Legal Writer Program Administrator Kathy Kero; Legal Writer Program Contract Attorney Steve Ramey; MPB ADW for Programs Darlene Edlund; MPB Warden Gerald Hofbauer; MPB Corrections Program Administrator Terry Tincknell; MPB Accounting Manager Robin McCarthy; MPB Accounting Technician Michelle Bahrman; MPB Administrative Officer Don Hurrell; MPB Grievance Coordinator Glen Caron; MPB ADW Shane Place; MPB Warden Robert Napel; MDOC Assistant Manager of Grievance and Appeals unknown Russell; MDOC Director Patricia Caruso; MDOC Deputy Director Dennis Straub; Muskegon County Assistant Prosecuting Attorney Paula Baker; Michigan Court of Appeals Chief Clerk Sandra Mengel; Michigan Court of Appeals Judge Donald Owens; Ingham County Circuit Court Official Michael Lewycky; Ingham County Chief Judge William Collette; and Assistant Attorney General Scott Rothermel.

Plaintiff's amended complaint is organized into nine "counts," each of which articulates several independent constitutional claims. In Count I of his amended complaint, Plaintiff alleges that, on August 31, 2006, he engaged in an escape attempt with another prisoner, Jeffrey Jowske. During that escape attempt, Jowske assaulted Defendant CO Willette Chambers by spraying hot sauce in her face and pushing her to the ground. Plaintiff was charged with escape and with aiding and abetting in the offenses of assaulting a prison employee and being a prisoner in

possession of weapons. Plaintiff pleaded guilty and was convicted on all three charges. He alleges, however, that Defendant Assistant Prosecuting Attorney Paula Baker conspired with Chambers to judge-shop. Specifically, he alleges that Baker arranged that Chambers would not appear at the originally scheduled preliminary examination on November 15, 2006 (claiming a doctor appointment), so that Baker could seek to have the examination adjourned until Judge Harold Closz returned from his temporary absence. Plaintiff alleges that Baker preferred to hold the hearing before Judge Closz, rather than conduct the examination before Judge David Jordan, whom Plaintiff believes would not have bound Plaintiff over on the aiding and abetting offenses. Plaintiff alleges that Baker's conduct violated his rights under the Due Process Clause of the Fourteenth Amendment and violated his First Amendment right of access to the courts.

Count II of the amended complaint is the only count raised by Plaintiff in the original complaint. Plaintiff alleges that, following his escape attempt, he was subjected to the use of excessive force every time he attended a court appearance. He lists the dates of his court appearances as follows: November 1, 2006; November 9, 2006; November 15, 2006; November 29, 2006; December 18, 2006; February 1, 2007; February 6, 2007; April 3, 2007; and April 30, 2007. (Am. Compl., Page ID #69.) On the orders of Defendant Norwood, Plaintiff was restrained by black-box handcuffing behind his back from the time transportation officers prepared Plaintiff for his court appearance until they returned. Plaintiff alleges that the handcuffing for hours in that position caused significant pain and suffering and potential permanent damage. Plaintiff argues that the black-box handcuffing was ordered as part of a conspiracy with Prosecutor Baker to coerce Plaintiff to plead guilty to the offenses as charged. In addition, Plaintiff alleges that Defendant Warden Smith was vicariously liable for Norwood's conduct and that Smith ignored both Plaintiff's

- 4 -

complaints and inquiries from Plaintiff's daughter. Plaintiff further alleges that Defendant Administrative Assistant Groves is responsible for failing to ensure that Warden Smith received the messages from Plaintiff's daughter. As part of the same claim, Plaintiff alleges that he was denied constitutionally adequate medical care when Defendant Dr. Migliorino directed Plaintiff to purchase pain medication from the prisoner store in order to address his complaints of shoulder and neck pain, rather than intervening to end the practice. Plaintiff alleges that Defendant Smith ignored his kite and that Defendant CO Gardner intercepted his grievance about the matter that he addressed directly to Step III. He further alleges that Defendant Klinesmith improperly rejected the grievance, denying Plaintiff his right to file a Step III grievance regarding staff brutality. Plaintiff contends that he was subjected to cruel and unusual punishment under the Eighth Amendment. He also alleges that he was deprived of his Sixth Amendment right to a jury trial when he was coerced by the brutal handcuffing practice. Finally, he alleges that he was denied access to the courts by Klinesmith's and Gardner's interference with the filing of his grievance.

In his third count, Plaintiff alleges that, after his escape attempt, he was transferred to Level V at ICF. Upon arrival, he was taken to Unit 2, Cell 6, where he awaited his misconduct hearing. Plaintiff was found guilty of attempted escape, and he was given 30 days of detention followed by an additional 30 days of loss of privileges. He began serving his detention on September 13, 2006, when he was placed in Detention Unit 1, Cell 16. On October 7, 2006, he was moved to Administrative Segregation Unit 2, Cell 33, where he was housed until his transfer to MBP on October 17, 2007. Plaintiff alleges that, when he arrived at Cell 33, it had been "specially prepared for him by the trusty level I porters under the direction of the Unit 2 COs." (Am. Compl., Page ID #57.) Plaintiff alleges that feces had been spread on the walls and floor, urine puddles

stood on the floor, rotten food was in the trash can, the sink and toilet were turned off, there was no toilet paper, and no bedding was available. In addition, Plaintiff complains that the window louvers had been pried apart, exposing him to cold outside air during the year he was in the cell. According to Plaintiff, Defendant COs Ferguson, Gardner, Wolever, Ingraham, Stine, Rutgers, Luther, Shreve and John Doe #1 retaliated against him for the assault on CO Chambers by denying him, at various times over the next year, cleaning supplies, writing paper, pens, MDOC forms, toilet paper, a pillow, a pillowcase, blankets, towels, facecloths and laundry bags. Plaintiff alleges that, while he did obtain those items over time, the named Defendants would seize one or more of the items during a cell shakedown, forcing Plaintiff to try to obtain a replacement. The deprivations allegedly occurred at least once a month. Plaintiff also alleges that these Defendants would, on occasion, deny him his weekly shower or deny him soap, shampoo, shaving cream and a razor during the shower. He also alleges that, on occasions over the year, he was denied access to legal property, denied his monthly Security Classification Committee interviews, denied monthly haircuts and denied weekly exercise yard time. Plaintiff alleges that Defendants Benoit, Richardson, Embry and Huss are vicariously liable for the retaliatory actions of the other Defendants.

Plaintiff further alleges that Defendants Ferguson, Gardner, Wolever, Ingraham, Stine, Rutgers, Luther, Shreve and John Doe #1 tormented him by spitting in his food or putting their fingers in his food; shaking down his cell and throwing his papers on the floor; turning off the water to his cell; turning off the electrical power to his cell; dumping his store purchases on the floor; removing the plastic bag that Plaintiff had used to cover the louver section of the window to keep out the cold air; leaving Plaintiff's laundry bag outside the cell rather than sending it for washing and drying, and later throwing out the bag; throwing away Plaintiff's medication; throwing

away any grievance Plaintiff placed in the mail; and opening certain mail addressed to Plaintiff's daughter. He also alleges that ARUSs Benoit and Richardson, RUM Embry and ADW Huss are vicariously liable for the actions of the corrections officers because they found no merit in Plaintiff's complaints about the actions of the corrections officers. He alleges that Klinesmith unconstitutionally rejected Plaintiff's requests for a grievance form and denied Plaintiff's grievances. In addition, Plaintiff alleges that, just before Plaintiff was transferred, Defendant Shreve intentionally broke his headphones and threw out a school textbook, telling Plaintiff that he could buy the school a new one. While Plaintiff initially was charged for the book, the charge ultimately was removed from his account. When Plaintiff was transferred, some of his legal documents were removed from his legal property foot locker, including the following: Plaintiff's handwritten record of his correspondence from October 7, 2006 through June 17, 2007; Plaintiff's daily record of cell cleaning, laundry pickup, and yard activities; Plaintiff's homemade calendar for the months of September 2006 through April 2007; copies of grievances and kites; and Plaintiff's hand-written notes recording various conversations. Based on these allegations, Plaintiff contends that he was subjected to retaliation in violation of the First Amendment, he was deprived of access to the courts under the First Amendment, and he was subjected to cruel and unusual punishment under the Eighth Amendment.

In Count IV of his amended complaint, Plaintiff complains that COs Luther and John Does #1 and #2 conspired to assault him in retaliation for his involvement with the assault on CO Chambers. According to Plaintiff, he was taken to the shower in ankle restraints and handcuffs, with his wrists fastened to a belly chain. When he reached the shower, CO John Doe #1 tripped him and shoved him to the floor. Defendant Luther jumped on Plaintiff's back and CO Doe#1 hit him 25 or

30 times in the back of the head, neck and right side of the face. Defendant Doe #1 made comments indicating that the assault was retaliatory both for assaulting Chambers and for filing grievances. Defendants then cleaned the blood off the floor with a mop and proceeded to give the same treatment to the prisoner from Cell #34. Plaintiff alleges that the assault occurred between October 7, 2006 and October 17, 2007, but he has intentionally withheld the date until discovery is complete, ostensibly to avoid spoliation of the evidence by Defendants. Plaintiff alleges that the assault was part of an unwritten custom within the MDOC to retaliate for the assault of a staff member. Following the assault, Plaintiff purportedly was denied all out-of-cell activities for three or four weeks. Plaintiff further contends that he was denied permission to see a doctor, despite having a swollen face, cuts and abrasions on the back of his head and neck, and headaches and dizziness. The assault also loosened Plaintiff's right lower molar, which later had to be pulled. Finally, Plaintiff alleges a series of retaliatory assaults on other prisoners, which, he alleges, demonstrate the existence of an MDOC custom. Plaintiff acknowledges that he did not report the beating because he was afraid of further assaults. Plaintiff alleges that Defendants' conduct violated the Eighth Amendment.

In Count V of his amended complaint, Plaintiff seeks class action certification regarding a civil conspiracy between Defendants Legal Writer Program Administrator Kero, Legal Writer Program Attorney Steve Ramey, and Chief Michigan Court of Appeals Clerk Sandra Mengel to deprive prisoners of their right of access to the courts by requiring prisoners to pay a portion of their civil action filing fees, notwithstanding the fact that the prisoners have no money in their accounts. Plaintiff alleges that the legal writers assigned to assist him used prison computer forms to file inadequate applications for leave to appeal to the Michigan Court of Appeals. He contends

that Defendant Mengel improperly issued an order signed by Judge Donald Owens, denying under MICH. COMP. LAWS § 600.2963(7) Plaintiff's motion to waive the initial partial filing fee of $9.00 and granting him 21 days in which to pay the $9.00. Plaintiff alleges that he had no money in his account during that period and he was unable to pay the partial fee. He alleges that the Legal Writer computer template produces a motion to waive fees for all legal writer prisoner claims that is knowingly and deliberately defective. He alleges that Defendants Kero and Ramey were deliberately indifferent to ensuring prisoners' federally protected rights. He alleges that Defendants Tincknell, Edlund, Hofbauer and Russell failed to properly handle his grievance and correct the problem and that Defendant Caruso failed to properly oversee Kero and Ramey, as well as Tincknell, Edlund, Hofbauer and Russell. He contends that his right of access to the courts was violated and alleges that the MDOC's grievance process is unconstitutional.

Plaintiff alleges in Count VI and seeks class certification on allegations that Defendants Circuit Court Clerk Michael Lewycky, Assistant Attorney General Scott Rothermel, and MBP Accounting Manager Robin McCarthy have conspired to deprive prisoners of their First Amendment rights to access the courts by impeding their efforts to obtain waivers of court-ordered filing fees and costs. He alleges that Defendant Judge Collette unlawfully issued a form order rejecting under MICH. COMP. LAWS § 600.2963(8) his complaint for writ of mandamus because Plaintiff owed outstanding debts for prior filing fees and costs. He alleges that Defendants Bahrman, Hurrell, Hofbauer, Russell, Caruso and Judge Collette supervised Lewycky, Rothermel and McCarthy and failed to correct the problem. Plaintiff alleges that on August 27, 2007, he filed a petition with the Ingham County Circuit Court for judicial review of a misconduct conviction. According to Plaintiff, on September 5, 2007, Defendant Lewycky served him with an order of the

court directing him to pay an initial partial filing fee of $9.04 and directing the MDOC to retain 50% of all future deposits to his prison account until the balance of $140.96 had accrued to satisfy Plaintiff's filing fee obligation. Defendant Rothermel was the attorney of record for the MDOC and should have received a copy of the order. Thereafter, on March 13, 2008, the court issued an opinion and order affirming the misconduct decision and ordering Plaintiff to pay costs of $54.00. Plaintiff alleges that Defendants have failed to post either the order regarding the filing fee or the order to pay costs as debts to his prison account. As a result, the debts never get paid and become an ongoing bar to Plaintiff's proceeding in the state courts on any other action. He alleges that, on September 30, 2009, he filed a complaint for writ of mandamus to direct the MDOC to begin collecting payments. His action was rejected on October 13, 2009 because he had failed to pay his outstanding fees and costs in the earlier action. Plaintiff alleges that Defendants John/Jane Doe #3, #4, and #5 were responsible for creating his debt account but failed to do so. He further alleges that Defendant CFA Deputy Director Straub failed to ensure the existence of an accurate accounting system that would have prevented the problem, that Defendant MBP Accounting Manager McCarthy refused to accept Plaintiff's copies of the court orders as proof that Plaintiff owed the debts, and that Defendants Bahrman, Hurrell, Hofbauer, Russell, Caruso, and Collette were vicariously liable for the conduct. Plaintiff contends that Defendants' actions in Count VI violated his right of access to the courts.

        In Counts VII and VIII, Plaintiff complains that, simultaneously with other seizures, Defendants McCarthy unlawfully seized funds in the amount of $111.00 to pay toward his institutional debt in violation of prison policy and his federal property rights. He alleges that Defendants Bahrman, Hurrell, Hofbauer, Russell and Caruso are vicariously liable for the unlawful

seizure of his property by denying his grievances. He contends that he was deprived of his property without due process in violation of the Fourteenth Amendment.

In the final count of his amended complaint, Plaintiff raises a facial challenge to the constitutionality of MICH. COMP. LAWS § 600.2963(8), which prevents a prisoner from commencing a new civil action until outstanding filing fees and costs have been paid. Plaintiff also alleges that numerous other state statutes impose fines and costs that cause all of a prisoner's monthly income to be paid toward his debts, leaving him only $10.00 per month. He alleges that the practice forces him to choose between buying hygiene supplies and buying postage, copying, paper, envelopes, writing implements, etc. He alleges that both the statute and the accounting practice deny him access to the courts.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II.    Class Action

Plaintiff has purported to bring this action on behalf of himself an all others similarly situated and seeks class certification. For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98-6156, 1999 WL 777435, at *1

(6th Cir. Sept. 21, 1999); *Marr v. Mich.*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996). Accordingly, because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny Plaintiff's request for class certification.

### III. Immunity

#### A. Prosecutorial Immunity

Plaintiff alleges in Count I that Defendant Assistant Muskegon County Prosecutor Paula Baker conspired with other Defendants to deprive Plaintiff of his right to due process by moving to continue his preliminary examination, ostensibly in order to prevent Judge David Jordan from holding the hearing and allowing Judge Closz to preside. Prosecutor Baker is entitled to absolute immunity for her actions in prosecuting the criminal action against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509

U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137.  In the Sixth Circuit, the focus of the inquiry

is how closely related the prosecutor's conduct is to his role of an advocate intimately associated

with the judicial phase of the criminal process.  *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d

1435, 1443 (6th Cir. 1997).  Obviously, moving to postpone a preliminary examination is part of the

prosecutor's role as an advocate.  Accordingly, Assistant Prosecuting Attorney Baker is entitled to

dismissal on the basis of immunity.

### B.	Judicial Immunity

Defendants Mengel, Owens, Lewycky and Collette are entitled to judicial or quasi-

judicial immunity.  Plaintiff claims in Count Five that Judge Owens violated his due process rights

and barred his access to the courts by signing an order denying him the right to proceed without

paying an initial partial filing fee, without properly considering whether he was entitled to a waiver

under MICH. COMP. LAWS 600.2963(7).  He alleges in Count Six that Judge Collette violated his

right of access to the courts by improperly rejecting his mandamus action under MICH. COMP. LAWS

§ 600.2963(8) because he owed outstanding fees.  He alleges that Mengel and Lewycky are liable

for transmitting those orders to him.

Generally, a judge is absolutely immune from a suit for monetary damages.  *Mireles*

*v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper

administration of justice that a judicial officer, in exercising the authority vested in him, shall be free

to act upon his own convictions, without apprehension of person consequences to himself.")

(internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v.*

*Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  Absolute judicial immunity may be overcome in

only two instances.  First, a judge is not immune from liability for non-judicial actions, i.e., actions

not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Absolute judicial immunity is extended to non-judicial officers who perform "quasi-judicial" duties. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (probate court administrator entitled to quasi-judicial immunity for his role in carrying out the orders of the court) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)); *see also Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (one who acts as a judge's designee in carrying out a function for which the judge is immune is also protected from suit seeking monetary damages)); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (clerk of court was entitled to quasi-judicial immunity for issuing a warrant as directed by the court); *accord Carlton v. Baird*, No. 03-1294, 2003 WL 21920023, at *1 (6th Cir. Aug. 8, 2003) (state court clerk's office employees were entitled to quasi-judicial immunity from state prison inmate's § 1983 claim); *Lyle v. Jackson*, No. 02-1323, 2002 WL 31085181, at *1 (6th Cir. Sept. 17, 2002) (quasi-judicial immunity applied to claims against state court clerks who allegedly failed to provide prisoner with requested copies of previous filings and transcripts); *Bradley v. United States*, 84 F. App'x 492 (6th Cir. 2003) (federal court clerk); *Washington v. Shelby County*, No. 88-6321, 1989 WL 63896 (6th Cir. 1989) (court reporter is entitled to judicial immunity when acting within the scope of his or her official duties).

Here, Plaintiff complains of court orders issued in two actions: (1) an order denying him a waiver of an initial partial filing fee; and (2) an order rejecting his pleading because he owed

outstanding fees in an earlier action. Those two actions unquestionably were judicial in nature, and Plaintiff has not alleged that the courts were without jurisdiction to issue them. *See Coleman v. Granholm*, No. 06-12485, 2008 WL 4584934, at *4 (E.D. Mich. Oct. 14, 2008) (finding that judges and clerks applying MICH. COMP. LAWS § 600.2963(8) were judicially immune from plaintiff's as-applied challenge to the constitutionality of the provision). Accordingly, Judges Owens and Collette are entitled to judicial immunity. Further, Defendants Mengel and Lewycky clearly were acting on behalf of the court when they sent Plaintiff a copy of the orders and returned Plaintiff's complaint. *Id.* Because Defendants Mengel and Lewycky are entitled to quasi-judicial immunity, Plaintiff may not maintain an action against them for monetary damages.

While judicial immunity prevents the recovery of damages, it does not bar prospective judicial relief against a judge acting in his judicial capacity. *Pulliem v. Allen*, 466 U.S. 522, 541-43 (1984); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996). The Court will address this challenge in its discussion of Plaintiff's access-to-the-courts claims, *infra*.

III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Groves, Smith, Benoit, Richardson, Embry, Huss, Tincknell, Edlund, Hofbauer, Russell, Bahrman, Hurrell, Straub, Caron, Place, Napel and Caruso other than his claim that they have been negligent in supervising their subordinates or have improperly investigated his grievances. In addition, with the exception of his claims in Counts II and III that Klinesmith interfered with his constitutional right to file a grievance, Plaintiff's only allegations against Klinesmith are that Klinesmith did not properly investigate or handle his grievance.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Groves, Smith, Klinesmith, Benoit, Richardson, Embry, Huss, Tincknell, Edlund, Hofbauer, Russell, Bahrman, Hurrell, Straub, Caron, Place, Napel and Caruso engaged in any active unconstitutional behavior. Accordingly, they will be dismissed from the action. Plaintiff also has failed to state a claim against Defendant Klinesmith based on his improper investigation or resolution of a grievance.

**B.      Interference with Grievance**

Plaintiff alleges at various points in his complaint that Defendants Gardner and Klinesmith deprived him of his constitutional rights by interfering with the filing of his grievances. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison

grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at \*2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at \*1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, no Defendant's conduct deprived him of due process.

In addition, even if Plaintiff was improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. Plaintiff's allegations that he was deprived of access to the courts by interference with his grievance filings therefore fail to state a claim for denial of access to the courts. Because Plaintiff's sole remaining claim against Klinesmith is that he interfered with the filing of Plaintiff's grievances, Defendant Klinesmith will be dismissed from the action.

## C.      Conspiracy

Plaintiff's amended complaint contains numerous allegations that various Defendants have conspired to deprive him of his constitutional rights. With the exception of the assault by Defendant COs Luther, John Doe #1 and John Doe #2 that Plaintiff alleges in Count IV, Plaintiff

- 18 -

fails to make factual allegations that would support a claim of conspiracy. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.*, No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. He fails to allege any factual link between Defendants and fails to allege any fact that would suggest any agreement. Therefore, he fails to state a claim for conspiracy, with the exception of his claim under Count IV that officers Luther, John Doe #1, and John Doe #2 conspired to turn off the camera while two officers assaulted Plaintiff.

## D. Statute of Limitations

Many of Plaintiff's claims are barred by the statute of limitations. Plaintiff did not file his original complaint until April 26, 2010. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[3] Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

Here, Plaintiff's original action was filed on April 26, 2010. In that action, Plaintiff raised a single cause of action against only three Defendants. That cause of action is now restated and expanded as Count II of the amended complaint, which was filed on July 11, 2010.[4]

---

[3]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statute enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

[4]In his amended complaint, Plaintiff also alleges that Defendant Smith was involved in the claim by not addressing his complaints about the improper restraints and that Defendants Gardner and Klinesmith improperly handled his grievance on February 1, 2007. Plaintiff also identifies Defendant Migliorino as the previously unknown physician

- 20 -

Plaintiff's allegations in Count I about judge-shopping happened at the time of his preliminary examination, which was held on November 15, 2006, nearly three-and-one-half years before Plaintiff filed his original complaint. Count I therefore is time-barred. Because the only allegations against Defendants Baker and Chambers are alleged in Count I, both Baker and Chambers are entitled to dismissal.

In Count II, Plaintiff alleges that he was placed in extreme restraints that caused him injury during all court dates from November 1, 2006 through April 30, 2007. All but the April 30, 2007 court appearance occurred more than three years before April 26, 2007, the date Plaintiff filed his original complaint. In addition, Plaintiff complains that Defendant Groves failed to take action on Plaintiff's daughter's complaints on Plaintiff's behalf. The last alleged contact by Plaintiff's daughter was March 21, 2007, more than three years before the filing of Plaintiff's original complaint. Further, Plaintiff alleges that Defendant Migliorino failed to treat his injuries between November 29, 2006 and February 26, 2007, when Migliorino prescribed pain medication. As a result, absent tolling, his limitations period on his claim against Migliorino expired on February 26, 2010. Moreover, the claims under Count II are not saved by the tolling rule of *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (tolling the statute of limitations in prisoner civil rights actions during the period of time his available state remedies were being exhausted). Here, Plaintiff alleges that he attempted to file a grievance directly to Step III on February 1, 2007. He acknowledges, however, that his grievance was not mailed. It instead was rejected by the Step I Grievance

---

identified in his original complaint. As the Court previously discussed, Plaintiff's only allegations against Defendants Smith and Klinesmith are that they failed to either supervise their subordinates or failed to properly handle a grievance, both of which are inadequate to impose supervisory responsibility on a defendant. Further, Plaintiff's allegations against Defendant Gardner on this claim are limited to his handling of a grievance, which fails to state a claim for the reasons set forth previously.

Coordinator and was returned to him that same day. As a consequence, even with one day of tolling for the period in which he attempted to seek his administrative remedies, all claims involving the use of extreme restraints prior to April 26, 2007 are time-barred, as are Plaintiff's only claims against Defendants Groves and Migliorino.

In Count III, Plaintiff complains of the conditions in which he was housed between October 7, 2006 and his transfer from the facility on October 17, 2007. The allegations about the cell condition when Plaintiff was initially placed in Cell 33 and all further alleged deprivations that occurred prior to July 11, 2007 are time-barred. Although Plaintiff's initial complaint was filed on April 26, 2010, the allegations in Count III of the amended complaint do not relate back to the initial complaint. Rule 15(c)(1) of the Federal Rules of Civil Procedure provides the circumstances under which a complaint may be said to relate back to the original pleading. The rule provides in relevant part that:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose our of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading . . . .

FED. R. CIV. P. 15(c)(1). In his original complaint, Plaintiff alleged an Eighth Amendment violation based on the use of extreme restraints during his transfers to and from court and on the lack of medical treatment for his injury caused by those restraints. Count II of his amended complaint arises out of the same underlying facts. Count III, in contrast, contains allegations about the conditions of his confinement while he was housed in Cell 33. Those allegations are wholly unrelated to the allegations contained in Count II. As a result, Count II of the amended complaint does not relate back to the filing of the original complaint. *See Henderson v. Hackel*, 170 F.R.D. 430 (E.D. Mich. 1997) (holding that inmates amended complaint alleging violations of his first amendment rights did

not relate back to the date of the original complaint which alleged unrelated conduct). As a result, to the extent they occurred before July 11, 2007, Plaintiff's claims regarding the conditions of his confinement are time-barred.

In Count IV of his amended complaint, Plaintiff alleges that he was beaten by Defendant COs Luther and John Doe #1, while John Doe #2 opened the cell door and turned off the camera in order to facilitate the assault. He also contends that Defendants Ferguson and Gardner denied him medical treatment for the injuries he sustained. Plaintiff intentionally has failed to state the date on which the assault occurred, saying only that it occurred between October 7, 2006, when he was placed in Cell #33, and October 17, 2007, when he was transferred to MBP. Because Count IV rests on allegations entirely distinct from those of the original complaint, the count does not relate back to the original filing. *See* FED. R. CIV. P. 15(c)(1). Moreover, Plaintiff is not entitled to tolling under *Brown*, 209 F.3d at 596, because he admits that he made no attempt to exhaust the claim. As a result, Plaintiff's claim is time-barred if it occurred before July 11, 2007.

In sum, Count I is time-barred, and Defendants Baker and Chambers are entitled to dismissal. In Count II, claims involving events that occurred before April 26, 2007 are time-barred, and Defendants Migliorino and Groves are entitled to dismissal. Plaintiff's claims in Count III regarding the conditions of his confinement between October 7, 2006 and July 11, 2007 are time-barred. Finally, Plaintiff's claims in Count IV regarding the assault by Defendants Luther, John Doe #1 and John Doe #2 are time-barred if they occurred before July 11, 2007.

### E.    Property Deprivations

In Counts VII and VIII of his amended complaint, Plaintiff alleges that he was deprived of his property in violation of MDOC policy and the Due Process Clause of the Fourteenth

Amendment. Specifically, he alleges that Defendant McCarthy unlawfully and without hearing seized more than $111.00 of his prisoner funds to pay towards his institutional debt.

To the extent that Plaintiff's amended complaint presents allegations that Defendants' actions violated state law or policy, Plaintiff fails to state an actionable claim under 42 U.S.C. § 1983. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that section 1983 does not provide redress for a violation of a state law); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (same). Further, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Moreover, in order to satisfy due process, the post-deprivation remedy does not have to guarantee a successful outcome, nor is it required to provide relief equivalent to that available in a § 1983 action. *See Parratt*, 451 U.S. at 543-44. The Due Process clause does not guarantee that the procedure will produce a correct decision. "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original); *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980).

Because Plaintiff's claims are premised upon the allegedly unauthorized negligent or intentional acts of Defendants McCarthy in violation of policy, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why state law would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant McCarthy will be dismissed.

### F.    Retaliation

Plaintiff alleges in Count III that, during his time in Cell #33, Defendants Ferguson, Gardner, Wolever, Ingraham, Stine, Rutgers, Luther, and John Doe #1 retaliated against him because

of his escape attempt and his involvement in the assault on Defendant Chambers. He also alleges that these Defendants and Defendant Shreve retaliated against him for complaining about his inhumane and retaliatory treatment while in Cell #33. In Count IV, Plaintiff complains that Defendants Luther, John Doe #1, and John Doe #2 retaliated against him both for his involvement in the assault on Chambers and his subsequent complaints about his conditions of confinement.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

To the extent that Plaintiff claims that the named Defendants retaliated against him for his involvement in the escape attempt and the assault on Defendant Chambers, he fails to state a claim. Escape and assault on an officer are not conduct protected by the First Amendment. As a result, any count alleging retaliation based on Plaintiff's illegal conduct fails to state a retaliation claim.

### G.    Access to the Courts

Plaintiff makes numerous claims that he was denied access to the courts. In Count I, he alleges that he was denied access to the courts by Defendant Klinesmith's interference with the

grievance process. In Count II, he alleges that he was denied access to the courts when he was deprived, on occasion, of pens, paper, and MDOC forms, as well as access to his legal property. In Count III, he alleges that the removal of certain legal property and handwritten records, together with interference with his right to file grievances, deprived him of access to the courts. In Count V, Plaintiff contends that MBP Legal Writer Program Administrator Kero and Legal Writer Program Contract Attorney Steve Ramey deliberately created the form requesting waiver of the initial partial filing fee for state actions. He contends that the faulty documents prevented him from receiving a state-court waiver of the initial partial filing fee in *Hawkins v. Mich. Dep't of Corr.*, Docket No. 289953 (Mich. Ct. App.), an appeal on judicial review of a misconduct conviction. Plaintiff also alleges in Count V that Judge Owens and Defendant Mengel interfered with his right of access to the courts by unconstitutionally applying MICH. COMP. LAWS § 600.2963(7). In Count VI, Plaintiff alleges that Defendants Lewycky, Rothermel, and McCarthy conspired to interfere with his right of access to the courts by preventing him from receiving a waiver of his initial partial filing fee. He alleges that Defendants John/Jane Doe #3, #4, and #5, Rothermel, and McCarthy failed to place a court-ordered fee debt on his prisoner account record, preventing him from accessing the courts, and Defendant Straub failed to ensure that his accounting system avoided such mistakes. He further alleges that Defendants Lewysky and Collette deprived him of his right to access the courts by rejecting his mandamus action under MICH. COMP. LAWS § 600.2963(8) because he owed outstanding filing fees and costs in another action. In Count VII, Plaintiff claims that Defendants Bahrman, Hurrell, Hofbauer, and Russell improperly reviewed his grievances.[5] In Count IX,

---

[5]As the Court previously has discussed, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. In addition, the Court previously has noted that, because Plaintiff has no constitutional right to file a grievance, he fails to state a claim based on interference with the filing of a grievance. *See* Opinion, sect. III(B), *infra*. Plaintiff's

Plaintiff brings a facial challenge to the constitutionality of MICH. COMP. LAWS § 600.2963(8), though he names no party Defendant in the count. He specifically alleges that section 600.2963(8), which bars a Plaintiff from filing another civil action or appeal when outstanding filing fees are owing, deprives prisoners of their right of access to the courts.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351. Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. Mar. 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. Mar. 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

access-to-the-court claims based on the handling of his grievances therefore fail to state a claim. As a result, both Count I and Count VII, which allege relevant facts related only to the grievance process, fail to state an access-to-the-court claim.

> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Moreover, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

### 1. Count II

Plaintiff's allegations in Count II fail to state an access-to-the-court claim. Plaintiff alleges that he was deprived, on occasion, of pens, paper, and MDOC forms, as well as access to his legal property. He does not, however, make any allegation of actual injury. Plaintiff does not allege that the intermittent deprivations interfered with any legal action, much less a criminal appeal, habeas corpus action, or nonfrivolous civil rights case. *Christopher*, 536 U.S. at 416. Therefore, Plaintiff's access-to-the-court claim under Count II will be dismissed.

2.      Counts V and VI

In Counts V and VI, Plaintiff makes several overlapping claims that the Court will address in one section.

In Count V, Plaintiff complains that a motion prepared for Plaintiff by the Legal Writer's Program was in some unspecified way inadequate and resulted in his being denied a waiver of the initial partial filing fee, which in turn resulted in a rejection of his appeal.[6]  Plaintiff's claim is without merit.  The action that Plaintiff alleges was impaired is neither a criminal appeal or habeas action nor a civil rights action.  *See Thaddeus-X*, 175 F.3d at 391.  It was an appeal from an administrative order.  Moreover, Plaintiff's claim appears to rest on an assumption that he was entitled to sufficient legal assistance to pursue his claims effectively.  The Supreme Court, however, has rejected such a standard.  *See Lewis*, 518 U.S. 354.  As the Court observed, "[t]o demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires."  *Id.*  While he was in segregation, Plaintiff was provided with the assistance of the Legal Writer's Program and his appeal and motion to waive attorney fees were prepared and filed.  He may not now allege that his constitutional rights were violated simply because the motion was unsuccessful.

In Count VI, Plaintiff alleges that Defendants John/Jane Doe #3, #4, and #5 and McCarthy failed to add as debts against his prisoner trust account the filing fee and costs ordered in *Hawkins v. Mich. Dep't of Corr.*, No. 289953 (Mich. Ct. App. Feb. 5, 2009).  Plaintiff alleges that Defendant Rothermel, as the Assistant Attorney General representing the defendants in the action

---

[6]The Court previously has rejected Plaintiff's conclusory claims that the inadequacies of the form document were the result of a conspiracy.

in which Judge Owens denied the waiver and ordered the state to withdraw the fees from Plaintiff's trust fund, should have taken affirmative action to ensure that the order was placed on Plaintiff's record. He contends that, as a result, payments on those debts never are made from his prisoner trust account and his money instead is used to pay toward his institutional debt. Plaintiff alleges that, because MICH. COMP. LAWS § 600.2963(8) prevents him from filing a new action or appeal until the outstanding fees have been paid, Defendants' conduct interferes with his right of access to the court. As actual injury, he alleges that his complaint for writ of mandamus was rejected by the Ingham County Circuit Court on October 13, 2009.

Plaintiff's allegations regarding the accounting errors fails to demonstrate actual injury within the meaning of *Lewis*, 518 U.S. at 355. His action for mandamus was not one of the limited types of actions protected under the right of access to the courts. *See Thaddeus-X*, 175 F.3d at 391. The Court therefore concludes Plaintiff's claim against the John/Jane Doe Defendants, Defendant McCarthy and Defendant Rothermel for denial of access to the courts is without merit. Although the Court previously dismissed Defendant Straub because allegations of vicarious liability are insufficient to state a claim, he is entitled to dismissal for this alternate reason.

The next part of Counts V and VI have to do with the constitutionality of MICH. COMP. LAWS § 600.2963(7) and (8), as applied to Plaintiff. In Count V, Plaintiff contends that Defendants Owens and Mengel unconstitutionally applied MICH. COMP. LAWS § 600.2963(7) to deny him a waiver of his initial partial filing fee, in violation of his right to access the court. In Count VI, Plaintiff alleges that Defendants Collette and Lewycky unconstitutionally applied MICH. COMP. LAWS § 600.2963(8) to reject his appeal because he owed outstanding filing fees and costs from the earlier action.

The Court lacks jurisdiction to hear Plaintiff's as-applied challenges. The *Rooker-Feldman* doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), bars attempts by a federal plaintiff to receive appellate review of a state-court decision in a federal district court. A federal court has no authority to review complaints about injuries caused by a state-court judgment rendered before the federal proceeding commenced. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005). Even constitutional claims that are inextricably intertwined with the state-court decisions are not reviewable. *Feldman*, 460 U.S. at 483 n.16; *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Patmon v. Michigan Supreme Court*, 224 F.3d 504, 509-10 (6th Cir. 2000); *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995). A federal claim is inextricably intertwined with the state-court judgment "'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.'" *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 391 (6th Cir. 2002) (quoting *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998)).

Plaintiff's claims are "inextricably intertwined" with decisions of the state courts because they amount to nothing more nor less than a prohibited appeal from the decisions of the Michigan state courts in denying him a waiver of his initial partial filing fee under MICH. COMP. LAWS § 600.2963(7) and in rejecting his appeal under MICH. COMP. LAWS § 600.2963(8) because he owed outstanding filing fees and costs from another case. Indeed, the Sixth Circuit previously has found that the *Rooker-Feldman* doctrine bars such an as-applied challenge to the

constitutionality of MICH. COMP. LAWS § 600.2963(7) and (8). *See Howard v. Whitbeck*, 382 F.3d 633, 638-41 (2004); *see also Bridges v. Collette*, No. 5:06-cv-46, 2008 WL 53771, at *3 (W.D. Mich. Jan. 2, 2008); *Coleman*, 2008 WL 4584934, at *6.

In sum, Plaintiff fails to state an access-to-the-court claim under either Count V or Count VI, so both counts will be dismissed. Defendants Owens, Collette, Mengel, Lewycky, Kero, Ramey, McCarthy, and John/Jane Doe #3, #4, and #5, will be dismissed from the action.

### 3.      Count IX

Plaintiff's final count, in which he brings a facial challenge to the constitutionality of MICH. COMP. LAWS § 600.2963(8), fails to state a claim. First, Plaintiff has named no party Defendant in the count. His allegations therefore are insufficient under FED. R. CIV. P. 8, which requires that, to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim. *See Twombly*, 550 U.S. at 544. Where no defendant is named, no defendant can be said to have been given fair notice of the claim.

Second, even assuming that Plaintiff had alleged a proper facial challenge to section 600.2963(8), the claim is without merit. "[A] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Section 600.2963(8) provides that "[a] prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid." *Id.* The subsection, however, must be read *in pari materia* with the other subsections set forth under the same provision. *See Bridges*, 2008 WL 53771, at *3 (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508

U.S. 602, 628-29 (1993) (holding that courts must avoid constructions of statutes that would render the statute unconstitutional)). Section 600.2963(7) permits the state court to waive the section 600.2963(8) requirement "if the prisoner has no assets and no means by which to pay the initial partial filing fee." *Id.* The courts have recognized that, when the two sections are read together, section 600.2963(8) does not unconstitutionally deny indigent prisoners access to the courts because section 600.2963(7) permits courts to waive or suspend the initial partial filing fee. *Coleman*, 2008 WL 4584934, at *6; *Bridges*, 2008 WL 53771, at *3. As a result, Plaintiff's facial challenge to the constitutionality of MICH. COMP. LAWS § 600.2963(8) is without merit.

Finally, Plaintiff alleges that he is denied access to the courts by the policy of taking all but ten dollars per month for payment toward his institutional and court-related debts. In this part of Count IX, however, Plaintiff again fails to allege actual injury. He fails to identify any cause of action that has been impaired by the practice.

For all these reasons, Plaintiff fails to state a claim under Count IX of his amended complaint, and it will be dismissed.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, Counts I, V, VI, VII, VIII, and IX will be dismissed, together with portions of the remaining counts. In addition, the Court determines that Defendants Baker, Groves, Chambers, Migliorino, Smith, Benoit, Richardson, Embry, Huss, Tincknell, Edlund, Hofbauer, Russell, Bahrman, Hurrell, Straub, Caron, Place, Napel, Caruso, Klinesmith, Owens, Collette, Mengel, Lewycky, Kero, Ramey, Rothermel, McCarthy, and John/Jane Doe #3, #4, and #5 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will

serve the complaint against Defendants Norwood, Ferguson, Gardner, Wolever, Ingraham, Stine, Rutgers, Luther and Shreve.[7]

An Order consistent with this Opinion will be entered.


Dated:  August 25, 2010            /s/ Paul L. Maloney
                                   Paul L. Maloney
                                   Chief United States District Judge

---

[7]The Court lacks sufficient information at this time to order service on Defendants named as John Doe #1 and John Doe #2.