UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CECIL HAWKINS,  # 205069,            )
                                     )
                     Plaintiff,      )        Case No. 1:10-cv-432
                                     )
v.                                   )        Honorable Paul L. Maloney
                                     )
JEFF FERGUSON, et al.,               )        **REPORT AND RECOMMENDATION**
                                     )
                     Defendants.     )
_____ )

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  This lawsuit challenges the conditions of plaintiff's confinement at the Ionia Maximum Correctional Facility (ICF), while he was awaiting trial for crimes committed at the Muskegon Correctional Facility (MCF) on August 31, 2006.  He was then in the custody of the Michigan Department of Corrections (MDOC) serving a life sentence for kidnaping and 33-to-50 years on three counts of first-degree criminal sexual conduct.[1]  On August 31, 2006, plaintiff and his accomplice, inmate Jeffrey Jowske, attacked a female corrections officer, subdued a garbage truck driver, and then drove the garbage truck through MCF's security fence.  Plaintiff was apprehended and charged with assault of a prison employee, unlawful possession of weapons, and prison escape.  On April 3, 2007, plaintiff pleaded guilty to these criminal charges.  On April 30, 2007, he was sentenced to 3-to-10 years for assault of a prison employee, 5-to-10 years for possession of weapons, and 5-to-10 years

_____

[1] *See People v. Hawkins*, No. 226718, 2002 WL 482571 (Mich. Ct. App. Mar. 29, 2002).

for prison escape.  His convictions have never been overturned.[2]  On April 26, 2010, plaintiff filed

this lawsuit.[3]

        The defendants are state employees at ICF, the prison where plaintiff was held while

his escape, assault, and weapons charges were pending in Muskegon County Circuit Court.  Plaintiff

alleges that ICF's Deputy Warden Nanetta Norwood violated his Eighth Amendment rights by

ordering that plaintiff be handcuffed behind his back in "black box" handcuffs during transportation

to and from his April 30, 2007 sentencing.[4]  (docket # 8, ID#s 49-55).  He alleges that Resident Unit

Officers Jeff Ferguson, Jack Gardner, Basil Wolever,  Jeremy Ingraham, Daniel Stine, Aaron

Rutgers, Jeffrey Luther, and Craig Shreve violated his Eighth Amendment rights between July 11,

2007, and October 17, 2007, because the cell's vent louvers did not close completely and in the

"winter months" allowed cold air to enter.  He alleges that during the period from July 11, 2007,

through October 17, 2007, he received cleaning supplies, writing paper, ink pens, various MDOC

---

[2]On August 15, 2008, the Michigan Court of Appeals denied plaintiff's delayed application for leave to appeal from his conviction.  *People v. Hawkins*, No. 285167 (Mich. Ct. App. Aug. 15, 2008) (copy found in *Hawkins v. Grunst et al.*, 2:10-cv-219 (W.D. Mich. 2010), docket # 1, ID# 66). On June 23, 2009, the Michigan Supreme Court denied plaintiff's application for leave to appeal. *People v. Hawkins*, No. 137456 (Mich. June 23, 2009)(copy found in case no. 2:10-cv-219, docket # 1, ID# 68).  On September 28, 2009, the Michigan Supreme Court denied plaintiff's motion for reconsideration.  (*Id.* at ID# 69).  Plaintiff did not seek federal habeas corpus relief.

    On September 2, 2010, plaintiff filed a civil lawsuit under 42 U.S.C. § 1983 seeking damages and declaratory and injunctive relief based on allegations that his attorneys, court administrators, and judges had conspired to deprive him of an appeal.  On November 5, 2010, this court dismissed plaintiff's complaint for failure to state a claim.  *Hawkins v. Grunst et al.*, 2:10-cv-219 (W.D. Mich. 2010) (docket #s 6, 7).  On July 27, 2011, the United States Court of Appeals affirmed this court's judgment.  *Hawkins v. Grunst et al.*, No. 10-2599 (6th Cir. July 27, 2011).

[3]Assuming plaintiff gave his complaint to prison authorities for mailing on the date he signed it, the complaint is deemed filed as of April 26, 2010, under the "mailbox rule."

[4]Chief Judge Maloney found that all plaintiff's claims regarding the use of restraints prior to April 26, 2007, are barred by the statute of limitations.  (Op. at 22, docket # 15, ID# 155).

forms, prisoner kites, flash kites, grievances, quartermaster forms, health care request forms, legal photocopy forms, expedited legal mail forms, toilet paper, bed sheets, pillow, pillowcase, blankets, towels, facecloths, and laundry bags, but during random cell shakedowns conducted at least once a month, Ferguson, Gardner, Wolever, Ingraham, Stine, Rutgers, Luther, or Shreve would seize one or more of these items, and thus it was necessary for plaintiff to spend some time going through the process of obtaining replacement items. The same officers allegedly deprived plaintiff of various out-of-cell activities. Plaintiff alleges that the prison records indicating that he had "refused" these activities are inaccurate. (Am. Compl. ¶¶ 25-29, ID# 59). Plaintiff alleges that during the period from July 11, 2007, through October 17, 2007, these defendants retaliated against him for filing unspecified grievances by tampering with food, searching his cell, delaying the pick-up or delivery of law books, failing to pick up his laundry bag, etc., in violation of his First Amendment rights. (*Id.* at ¶¶ 32-33, ID#s 60-61). Plaintiff alleges that defendant Luther assaulted him on some unspecified date in violation of his First and Eighth Amendment rights. He alleges that the assault occurred sometime between October 7, 2006, and October 17, 2007, but he has intentionally withheld the date until discovery is complete, ostensibly to avoid spoliation of evidence by defendants.[5] (Op. at 8, ID# 141; *see* Am. Compl. ¶ 05, ID# 66). Plaintiff alleges that defendant Shreve broke his headphones in violation of his First Amendment rights.[6] (Am. Compl. ¶ 44, ID# 62). Plaintiff sues defendants in their official and individual capacities and seeks an award of damages and declaratory and injunctive relief.

---

[5]If the alleged assault occurred before July 11, 2007, plaintiff's claim is barred by the statute of limitations. (Op. at 23, ID# 156).

[6] All other claims were dismissed on August 25, 2010. (docket #s 15, 16).

The matter is before the court on defendants' motions for summary judgment. (docket #s 43, 65). Plaintiff has filed his response (docket # 58),[7] and the motions are ready for decision. For the reasons set forth herein, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that all plaintiff's claims for declaratory and injunctive relief be dismissed as moot. I further recommend that defendants' motions for summary judgment be granted, and that judgment be entered in defendants' favor on plaintiff's claims for damages against defendants in their individual capacities.

## **Applicable Standards**

### A.    Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Kizer v. Shelby County Gov't*, 649 F.3d 462, 466 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is "whether 'the evidence

---

[7]Plaintiff's amended complaint is not verified under penalty of perjury such that it could be considered as his affidavit in opposition to defendants' motions for summary judgment. *See El Bey v. Roop*,  530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  His brief concludes with a paragraph labeled "verified pleading" (docket # 58 at 29, ID# 455), but plaintiff's brief is not a pleading, *see* Fed. R. Civ. P. 7(a), and "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment."). The specific factual statements in plaintiff's brief, as opposed to conclusions, are considered, as are his affidavits. (docket # 9; docket # 58-2, ID#s 466-68).

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, 439 F. App'x 513, 518-19 (6th Cir. 2011). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, No. 10-2153, __ F.3d __, 2012 WL 117613, at * 2 (6th Cir. Jan. 17, 2012); *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036,

1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to the portions of defendants' motions for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a).

      B.    <u>Exhaustion</u>

      Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532

U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the

prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court.  548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).  The procedural bar does not apply where the State declines to enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

   MDOC Policy Directive 03.02.130 (effective March 5, 2007) is the version of the MDOC grievance policy applicable to plaintiff's claim against defendant Norwood based on the restraints she authorized for transporting plaintiff to and from his April 30, 2007 sentencing.  The policy directive contained these specific requirements:

> Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V.  The Policy Directive also provides the following directions for completing grievance forms:  "The issues shall be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted.  *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at *16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x. 469, 470 (6th Cir. 2009).

> The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  P.D. 03.02.130 at ¶ V.  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due.  *Id.* at ¶ BB.  The respondent at Step II is designated by the policy.  The Step II respondent is generally the warden.  *Id.* at ¶ DD.  If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶ FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ FF.  The Grievance and Appeals Section is the Step III respondent.  *Id.* at ¶ GG.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ S.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing...." *Id.*

*Green v. Tudor*, 685 F. Supp.2d 678, 686-87 (W.D. Mich. 2010).

The version of Policy Directive 03.02.130 applicable to all other claims is the version which went into effect on July 9, 2007.[8]  It requires that inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.*  The directions for completing Step I grievance forms are unaltered:  "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted.  *See Ketzner v. Williams*, 2008 WL 4534020, at * 16; *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X.  If the inmate is dissatisfied with the Step I response, or does

---

[8]A copy of Policy Directive 03.02.130 (effective July 9, 2007) is found in the record.  (docket # 44-2, ID#s 303-09).

not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 224 (6th Cir. 2011). An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6

-10-

("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is serving a life sentence and other lengthy sentences in the custody of the Michigan Department of Corrections (MDOC). Defendants are employed by the State of Michigan at the Ionia Maximum Correctional Facility (ICF).

1.  Criminal Convictions for Assaulting a Corrections Officer,
    Unlawful Possession of Weapons, and Prison Escape

On August 31, 2006, plaintiff and inmate Jeffrey Jowske attacked the female corrections officer at the Muskegon Correctional Facility (MCF), subdued a truck driver, and then drove his garbage truck through MCF's security fence. Plaintiff blames his co-defendant Jowske for spraying hot sauce in Officer Chambers' face and shoving her to the ground. Plaintiff was apprehended and charged with assault of a prison employee, prisoner in unlawful possession of weapons, and prison escape. On November 1, 2006, plaintiff was arraigned in 60th District Court. His preliminary examination began on November 15, 2006, and concluded on or about November 29, 2006, with plaintiff being bound over for trial in Muskegon County Circuit Court on all three charges.

On March 27, 2007, plaintiff filed a motion for a temporary restraining order in his criminal case. (docket # 58-2, ID#s 456-68; docket # 58-3, ID#s 491-96). He complained that he lacked an adequate supply of ink pens and paper, was not given law books with the desired dispatch,

and lacked "timely access" to his legal property, all of which allegedly prevented him from preparing unspecified "pleadings" in his criminal case. He also complained that he had not been provided with the haircut and beard trim that he had requested and he expressed his desire to be transported in more comfortable restraints. (*Id.*). Judge Timothy G. Hicks denied plaintiff's motion. (docket # 58-3, ID# 510).

On April 3, 2007, plaintiff pleaded guilty to the three criminal charges. He was sentenced on April 30, 2007. Deputy Warden Norwood authorized that plaintiff be transported to and from his sentencing hearing in black box restraints secured behind his back. The black box restraints prevent the prisoner from tampering with the locks; securing them behind the back provides an added measure of security. Plaintiff was never diagnosed or treated for any injury related to this use of restraints. He blames the restraints for his neck and shoulder discomfort and a limited range of arm motion. (Plf. Aff. ¶¶ 03-05, docket # 9, ID# 91).

Plaintiff was an inmate at ICF while he was awaiting his trial on the criminal charges arising out of the August 31, 2006 incident. He was housed in administrative segregation at all times relevant to the claims he is asserting in this lawsuit. Plaintiff states that he had problems obtaining adequate personal grooming services at ICF, resulting in uncut hair and a disheveled look. (Plf. Aff. ¶ 6, docket # 58-2 at ID# 467). On October 17, 2007, plaintiff was transferred to the Marquette Branch Prison (MBP).

2.    Grievance History

It is undisputed that plaintiff never filed grievances against defendants Ferguson, Gardner, Luther, Rutgers, Shreve, Stine, Wolever, or Ingraham corresponding to his First and Eighth

Amendment claims.  Plaintiff states that he had difficulty obtaining blank grievance forms, and on the occasions when he did make an attempt to file a grievance, it was not delivered to ICF's grievance coordinator.  (docket # 58, ID#s 427-28).

On February 1, 2007, plaintiff attempted to bypass Steps I and II and file a grievance directly to Step III (docket # 58 ¶¶ 3-5, 6-9, ID#s 421-22).  This grievance (No. 201140) stated as follows:

> This grievance contains an allegation of staff brutality – file at Step III.
> The staff brutality at ICF is grounded in the facility detail requirement that I be handcuffed behind my back for the duration of my trip to and from Muskegon Court as well as during the time I am in court.  This procedure invokes a great deal of pain and according to transportation protocol it is only used on prisoners who exhibit unruly or disruptive behavior during their transfers.  ADW Norwood has specifically required this extreme restraint on me based on her misunderstanding that I assaulted the female escort officer during the 8/31/06 escape attempt and her desire to inflict summary punishment on me for that conduct.  I did not assault anyone and his extraordinary and this extraordinary and unjustified infliction of pain violates my Eighth Amendment right against Cruel and Unusual Punishment.

(docket # 44-4 at ID# 315).  On February 7, 2007, this grievance was rejected with no action taken "because the content of the administrative rule, policy directives, and Director's Office Memoranda are not grievable."  (docket # 44-2, ID#s 301-02; docket #  44-4, ID# 314; docket # 58-1, ID# 454).

Plaintiff did not file any grievance against defendant Norwood based on the restraints she authorized for use during plaintiff's April 30, 2007 transportation to and from his sentencing hearing.

On October 29, 2007, plaintiff filed a grievance complaining that his headphones had been damaged during the shipment of his personal property from ICF to MBP.  (docket # 44-5, ID# 319).  Plaintiff's grievance stated that defendant Shreve "packed up" his property, but his grievance

is devoid of any claim of retaliation corresponding to the allegations found in plaintiff's amended complaint.[9]

**Discussion**

1.      Defendants' Motions for Summary Judgment are Ready for Decision

Plaintiff filed his complaint on April 26, 2010.  Discovery has never been stayed in this case.  On December 8, 2010, defendants Ferguson, Gardner, Luther, Norwood, Rutgers, Shreve, Stine, and Wolever filed their motion for summary judgment.  (docket # 43).  Plaintiff requested and received an extension of time to file his response.  (docket # 57).  On March 10, 2011, plaintiff filed his response (docket # 58), but he insisted that he required more time for discovery.  (*Id.* at ID#s 417, 432-34).  On April 25, 2011, defendant Ingraham filed his motion for summary judgment.  More than nine months have passed since plaintiff filed anything in this case.  (*see* docket # 62).  Plaintiff has enjoyed a more than adequate opportunity to conduct discovery in support of his claims.  The December 2010 motion for summary judgment has been pending for more than a year and the April 2011 motion for summary judgment has been pending for more than nine months.  Defendants' motions for summary judgment are ready for decision.

2.      Eleventh Amendment Immunity

All plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court

---

[9]"Plaintiff alleges that when he handed his Koss CL-20 headphones through the metal tray door slot, CO SHREVE held them up to the cell window, broke them in separate pieces, and said: 'This is your going away present.  If you ever come back here again, this is what will happen to you.' Paragraphs paraphrased by plaintiff."  (Am. Compl. ¶ 44, ID# 62).

against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against them in their official capacities.

### 3.   Mootness

Plaintiff is an inmate at MBP. The defendants are employed by the State of Michigan at ICF. Plaintiff's claims for injunctive and declaratory relief against the defendants are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### 4.   Exhaustion

Defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against him as required by 42 U.S.C. § 1997e(a). Plaintiff does not claim to have filed grievances against defendants Ferguson, Gardner, Luther, Rutgers, Shreve, Stine, Wolever, or Ingraham. Instead, plaintiff argues, without supporting legal authority, that the "MDOC

grievance procedure was tried and found Constitutionally lacking."[10] (Plf. Brief at 6, docket # 58, ID# 422).  Plaintiff states that unspecified corrections officers at ICF's Unit 2 refused to provide blank grievance forms or discarded completed forms.  (*Id.* at 11-12, ID#s 427-28). Plaintiff's vague and blanket assertions do not suffice at the summary judgment stage.  Further, even assuming that he was somehow prevented from filing grievances at ICF, it was incumbent upon him after his October 17, 2007 transfer to MCF to file grievances corresponding to all the claims he is now asserting against defendants Ferguson, Gardner, Luther, Rutgers,  Shreve, Stine, Wolever, and Ingraham, including an explanation documenting his reasons for the delayed filing of each grievance,[11] and to pursue all those grievances through Step III decisions.  Assertions of futility do not excuse plaintiff from the exhaustion requirement.  *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d at 309 ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Plaintiff argues that the Step III grievance he filed on February 1, 2007 complaining of "staff brutality" should be considered as adequate to exhaust his claim against defendant Norwood.  A February 2007 grievance could not exhaust the claim plaintiff is asserting against

---

[10]The MDOC's grievance procedure is not constitutionally deficient.  Under the PLRA, plaintiff was required to properly exhaust all of his claims against defendants under the MDOC's grievance procedures before filing this lawsuit.  42 U.S.C. § 1997e(a); *see Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see also Hall v. Warren*, 443 F. App'x 99 (6th Cir. 2011).

[11]Policy Directive PD  03.02.130 ¶ G states: "The grievance shall not be rejected if there is a valid reason for the delay."  (docket # 44-2, ID# 304).

Norwood for authorizing that plaintiff be transported to and from his April 30, 2007 sentencing in black box restraints fastened behind his back.[12]

       I find that defendants have carried their burden on the affirmative defense and are entitled to judgment in their favor as a matter of law.  Plaintiff did not properly exhaust any claim he is asserting in this lawsuit.

       5.     <u>Alternative Grounds for Granting Defendants' Motions for Summary Judgment</u>

       Assuming *arguendo* that plaintiff had properly exhausted his claims, defendants would nonetheless be entitled to entry of judgment in their favor.  As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes.  To establish a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, the offending conduct must reflect an unnecessary and wanton infliction of pain.  *See Ingraham*, 430 U.S. at 670.  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312, 320-21 (1986)]:  whether the force was applied as a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see Wilkinson v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). In determining whether the use of force is wanton and unnecessary, the court should evaluate the

---

[12] All plaintiff's claims based on the restraints used before April 30, 2007, were dismissed because they are barred by the statute of limitations.  (Op. at 21-22).  Further, all plaintiff's claims attempting to undermine his plea-based criminal convictions (*see e.g.*, Am. Compl. ¶¶ 01, 04, 52, 60) are *Heck*-barred.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, efforts made to temper the severity of a forceful response and the absence of any serious injury.  503 U.S. at 7.

Plaintiff objects to the use of a black box restraints secured behind his back during transportation to and from his April 30, 2007 sentencing.  "The box is a metal or plastic device fitting over the handcuffs to prevent them from being picked." *Fulford v. King*, 692 F.2d 11, 13 (5th Cir. 1982); *see Moody v. Proctor*, 986 F.2d 239, 240 n.3 (8th Cir. 1993) ("The black box is applied over the chain and lock area of conventional handcuffs to form a rigid link between the two wristlets."); *see also Grant v. Smaldone*, No. 9:07-cv-745, 2009 WL 2823736, at * 2  n.3 (N.D.N.Y.. Aug. 31, 2009) ("The device, invented by an inmate, covers the keyhole of the handcuffs to prevent an inmate from trying to pick the cuffs open while being transported outside the facility."). "[R]estraining an inmate with the black box behind his back provides an additional measure of security . . . ." *Peoples v. Davis*, No. 8:08-252, 2009 WL 349171, at * 3 (D.S.C. Feb. 10, 2009).  Use of the black box during the transportation of prisoners is "penologically justified 'by the greater risk of escape . . . and reduced number of guards.'" *Moody*, 986 F.2d at 241 (quoting *Fulford v. King*, 692 F.2d at 14).  The need for a use of significant restraints in this case is patent.  Maximum-security prisoners are not usually the most gentle and tractable of men.  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992).  The level of restraint authorized by defendant Norwood was appropriate and consistent with the extreme escape threat plaintiff posed.  Plaintiff was a maximum security prisoner who, while serving a life sentence, participated in a deliberate attack on a prison guard, possessed a weapon, and escaped by using a garbage truck to break through the prison's perimeter fence.  He was being transported to and from his sentencing hearing where he faced significant additional

prison sentences.  Plaintiff provided no evidence that he suffered any serious injury as a result of the restraints used on April 30, 2007.  I find that no reasonable trier of fact could find on the present record that defendant Norwood violated plaintiff's Eight Amendment rights.

Plaintiff's First Amendment and Eighth Amendment claims against the remaining defendants fare no better.  The elements of these claims are well established.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) and *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).  Plaintiff has not supplied evidence on which any reasonable trier of fact could find in his favor on these claims.  He argued in his March 14, 2011 brief that he "only submitted general factual allegations to clear the pleading stage" and stated that he needed more time for discovery.  (docket # 58, ID#s 432-34).  He has had more than ample time to complete his discovery and support his allegations with evidence.  More than nine months have passed, and plaintiff has submitted nothing in support of his claims.  I find that defendants Ferguson, Gardner, Wolever, Ingraham, Stine, Rutgers, Luther, and Shreve are entitled to entry of judgment in their favor as a matter of law.

### Recommended Disposition

For the foregoing reasons, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I further recommend that all plaintiff's claims for declaratory and

injunctive relief be dismissed as moot.  I further recommend that defendants' motions for summary

judgment (docket #s 43, 65) be granted, and that judgment be entered in defendants' favor on all

plaintiff's claims for damages against defendants in their individual capacities.


Dated:   February 13, 2012             /s/  Joseph G. Scoville_____
                                       United States Magistrate Judge


## NOTICE TO PARTIES

         Any objections to this Report and Recommendation must be filed and served within
fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All
objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file
timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas
v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129
S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General
objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*,
454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006)